IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CORTNEY MCDANIEL GIBBS,<br><br>Plaintiff,<br><br>v.<br><br>LENDING CLUB CORPORATION,<br><br>Defendant. | CIVIL ACTION FILE<br><br>NO. 1:19-CV-3330-MHC-JSA |

## ORDER

Plaintiff Cortney McDaniel Gibbs ("Gibbs") filed her Complaint on July 22, 2019, alleging, in relevant part, that Defendant LendingClub Corporation ("LendingClub") failed to properly investigate and correct allegedly inaccurate credit information furnished to Equifax Information Services, LLC ("Equifax") in violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. Compl. [Doc. 1]. This action is before this Court on the Final Report and Recommendation (the "Final R&R") of Magistrate Judge Justin S. Anand [Doc. 85], recommending that LendingClub's Motion for Summary Judgment [Doc. 66] be granted. The Order for Service of the Final R&R [Doc. 86] provided notice that, in accordance with 28 U.S.C. § 636(b)(1), the parties were authorized to file

objections within fourteen (14) days of the receipt of that Order. After receiving an extension of time in which to file her objections, Gibbs filed her Objections to the Final R&R on August 19, 2021 ("Pl.'s Objs.") [Doc. 91].

## I. STANDARD OF REVIEW

In reviewing a Magistrate Judge's Report and Recommendation, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." United States v. Schultz, 565 F.3d 1353, 1361 (11th Cir. 2009) (quoting Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988)) (internal quotation marks omitted). Absent objection, the district court judge "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge," 28 U.S.C. § 636(b)(1), and need only satisfy itself that there is no plain error on the face of the record in order to accept the recommendation. See United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983). Further, "the district court has broad discretion in reviewing a magistrate judge's report and recommendation"—it "does not abuse its discretion by considering an argument

2

that was not presented to the magistrate judge" and "has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge." Williams v. McNeil, 557 F.3d 1287, 1290-92 (11th Cir. 2009).

## II. FACTUAL BACKGROUND

The relevant facts in this case are not disputed, and are taken from the parties' statements of undisputed facts which have been admitted or not otherwise properly contested based upon the requirements of the Local Rules of this Court. See Final R&R at 1-6; LendingClub's Statement of Undisputed Material Facts [Doc. 67]; Gibbs's Resp. to LendingClub's Statement of Material Facts Not in Dispute [Doc. 76-1]. Gibbs obtained a loan from LendingClub (the "Loan") on June 1, 2016, which became delinquent two months later. LendingClub "charged off" the Loan and the service of the Loan was transferred on December 27, 2016. On May 31, 2017, LendingClub reported the following information to the Credit Reporting Agencies ("CRAs"): (1) the Loan became delinquent in August 2016, (2) the Loan was charged off as indicated by the Account Status Code "97," (3) the Loan had a "$0" balance, "$0" in amount past due, and "$0" in monthly payments, and (4) the Loan was service-transferred as indicated by the Special Comment Code "AH."

On March 15, 2018, a CIN Legal Data Report showed that Gibbs had a credit score of 503 based upon seventeen accounts with more than $32,977.00 past due. However, LendingClub's tradeline in the report continued to show $0 past due, a $0 balance, and a monthly payment of $0. On March 30, 2018, Gibbs filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Northern District of Georgia.

On May 25, 2019, LendingClub received notice of Gibb's dispute from Equifax via an Automated Consumer Dispute Verification form ("ACDV"), which was accompanied by a letter from Gibbs claiming that the status of the Loan on her credit report should be corrected to reflect the inclusion of the Loan in the pending bankruptcy case. After receiving the ACDV, LendingClub reviewed its account records for the Loan and confirmed that all of the information it previously reported as of May 31, 2017 (the date LendingClub asserts was the last time it reported information about the Loan) was accurate. According to LendingClub, its account records contained a reference to Gibbs's bankruptcy filing after the Loan was service-transferred but it did not change its reporting to reflect this post-transfer information in accordance with its policy. On June 7, 2019, Lending Club responded to Equifax with a "Response Code" of "01: Account information accurate as of the date reported." The LendingClub tradeline in the Equifax Post-

Investigation Report includes a data field for "Items As Of Date Reported" populated with the date "06/15/2019" but LendingClub never reported June 15, 2019, as the date of when LendingClub was reporting on the Loan.

Gibbs's bankruptcy appeared in the public record section of Equifax's credit reports. After the investigation of Gibbs's dispute, her June 15, 2019, credit report continued to have LendingClub's tradeline listed with a balance of $0, a past due amount of &0, and a scheduled monthly payment of $0.

### III. THE MAGISTRATE JUDGE'S FINAL R&R

In reviewing the Final R&R, it is important to note the distinction between the Final R&R and Judge Anand's Non-Final Recommendation issued on March 3, 2020 (the "Non-Final R&R"). Gibbs v. Equifax Info. Servs., LLC, No. 1:19-CV-3330-MHC-JSA, 2020 WL 8225354 (N.D. Ga. Mar. 3, 2020), non-final R. & R. adopted, 2020 WL 8224986 (N.D. Ga. Mar. 18, 2020). In the Non-Final R&R, Judge Anand was ruling on LendingClub's Motion to Dismiss, in which all factual allegations in Gibbs's Complaint and reasonable inferences drawn therefrom were required to be taken as true. See Gibbs, 2020 WL 8225354, at *2. In discussing LendingClub's obligations following the transfer of the Loan, Judge Anand stated as follows:

> LendingClub argues that it is not required to update its reporting based on developments post-dating its sale of an account. The shortest answer

5

> to this argument is that the timing of the sale of the Plaintiff's account in question is a fact outside the pleadings, and therefore cannot be the basis of dismissal. There are simply no factual allegations demonstrating that LendingClub sold Plaintiff's account prior to the bankruptcy, in its entirety or otherwise.
>
> If anything, the factual allegations in the Complaint permit an inference that LendingClub may not have sold the account until after the bankruptcy filing. Plaintiff alleges that she filed for bankruptcy in March of 2018, but LendingClub allegedly did not mark the account as sold at that time. See Compl. [1] at ¶¶ 18, 123-25. Rather, according to the allegations in the Complaint, LendingClub allegedly did not report the account as "sold/transferred" until 16 months later, in June of 2019. See id. at ¶ 145. A reader of the reports that LendingClub allowed to be published in the many months after March of 2018 would be permitted to assume that LendingClub still maintained some interest in the account. Such a conclusion may not have been true, as facts adduced in discovery may show. But at this juncture the Court cannot find dismissal to be appropriate based on LendingClub's representations in its briefs that it sold the account more than 16 months earlier than any report of such a sale to the consumer reporting agencies.

Gibbs, 2020 WL 8225354, at *4 (footnote omitted).

As Judge Anand notes in the Final R&R, "[i]t is now undisputed that [LendingClub] sold and charged off [Gibbs]'s account over a year before [Gibbs] filed for bankruptcy" and that LendingClub did not report on Gibbs's account after May 31, 2017, which was, again, prior to the bankruptcy filing. Final R&R at 13. Gibbs "admits that [LendingClub]'s post-dispute verification was not only accurate as to the state of her account as of May 31, 2017, and that [LendingClub] itself

never represented that its post-dispute verification was meant to represent the state of her account after that date." Id. at 13-14.

It is with this background in mind that the Court considers Gibbs's objections.

## IV. GIBBS'S OBJECTIONS

### A. The Magistrate Judge Did Not Err by Holding That the FCRA Did Not Require LendingClub to Update its Reporting to Reflect Information Subsequent its Transfer of Gibbs's Account or That the Failure to Note the Pending Bankruptcy Proceeding Otherwise Violated the FCRA.

Gibbs contends that 15 U.S.C. § 1681s-2(b)(1) requires an entity who furnishes credit information to CRAs to update its reporting to reflect current information even after the account was transferred, regardless of whether the account was accurate when reported. Pl.'s Objs. at 2-11. 15 U.S.C. § 1681s-2(b)(1) provides as follows:

> **(b) Duties of furnishers of information upon notice of dispute**
> **(1) In general**
> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall--
> > **(A)** conduct an investigation with respect to the disputed information;
> > **(B)** review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

7

> **(C)** report the results of the investigation to the consumer reporting agency;
> **(D)** if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
> **(E)** if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly--
> > **(i)** modify that item of information;
> > **(ii)** delete that item of information; or
> > **(iii)** permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1).

Gibbs contends that this language required LendingClub to continue to revise its reporting after it sold the Loan in order to make it "complete," citing Peterson v. Equifax Info. Servs., LLC, No. 1:19-CV-387-MLB-JKL, 2020 WL 9599949 (N.D. Ga. Aug. 19, 2020), non-final R. & R. adopted, 2020 WL 9599947 (N.D Ga. Nov. 17, 2020), and Williams v. Credit One Bank, N.A., No. 1:19-CV-949-MHC-JKL, 2019 WL 11502903 (N.D. Ga. Dec. 26, 2019), non-final R. & R.

adopted, 2020 WL 7408762 (N.D. Ga. Jan. 16, 2020). However, Gibbs's citations are inapposite because, as Judge Anand did when ruling on LendingClub's motion to dismiss in his Non-Final R&R, these cases were also non-final reports and recommendations determining motions to dismiss, where the well-pleaded factual allegations and all reasonable inferences drawn therefrom were taken as true. See Peterson, 2020 WL 9599949, at *4 ("At this stage of the proceedings, the Court is not persuaded that as a matter of law, just because no balance was owed specifically to LendingClub, it had no obligation to update Plaintiff's tradeline to note the Bankruptcy. . . . In the Complaint, Plaintiff alleges that LendingClub was put on notice of the Bankruptcy and the debt's inclusion in it, both through the Bankruptcy notices and Plaintiff's dispute through Equifax, and was therefore aware that its prior reporting might be inaccurate or incomplete."); Williams, 2019 WL 11502903, at *4-5 (internal punctuation and citations omitted) ("At this stage of the proceedings, the Court is not persuaded that as a matter of law, just because no balance was owed specifically to Credit One, it had no obligation to note the Bankruptcy in 2019. . . . [While] Credit One's interpretations of and reliance on these industry guidance statements may ultimately prevail, . . . at the motion-to-dismiss stage of the proceedings, the Court cannot find that these statements so clearly and indisputably stand for the proposition Credit One asserts, that is, that

there are no set of facts that could be proven to show it violated an obligation to report bankruptcy in this case."). See also Cooper v. LendingClub Corp., No. 1:20-CV-157-ELR, 2021 WL 2188575, at *6 (N.D. Ga. Mar. 25, 2021) (denying in part the defendant's motion to dismiss because it was not established that the defendant transferred or sold the debt prior to the plaintiff's bankruptcy filing.).

Gibbs's argument that it was error for Judge Anand to fail to rule that the FCRA mandates that a furnisher always must amend or correct its tradeline with events that occurred subsequent to the transfer or sale of the account is not supported by case law. This Court agrees with the determination of another judge of this district who opined that "[s]uch a requirement would be beyond the scope of the duties imposed on Defendant by the FCRA, as the FCRA only requires furnishers to investigate the accuracy of the disputed information that they provided to a CRA." Hickman v. Experian Info. Sols., Inc., No. 1:17-CV-388-LMM-JFK, 2019 WL 2306198, at *3 (N.D. Ga. Mar. 11, 2019) (footnote omitted). See also Terhune v. Bank of Am., N.A., No. 1:18-CV-1440-WTL-MJD, 2018 WL 6249982, at *2 (S.D. Ind. Nov. 28, 2018) ("[T]he Defendant is not currently

reporting inaccurate information, and the Plaintiff has failed to articulate why the Defendant should amend a report that was accurate at the time it was issued.").[1]

The Magistrate Judge did not err by holding that the failure of LendingClub to reference Gibbs's bankruptcy proceeding in in its response to Equifax's ACDV did not violate 15 U.S.C. § 1681s-2(b)(1) where the bankruptcy occurred subsequent to the transfer of the Loan and the last reporting made on the account by LendingClub.

### B. The Magistrate Judge Did Not Err by Concluding That No Damages Resulted From the Failure to Include Gibbs's Bankruptcy in the LendingClub Tradeline.

Gibbs asserts that the failure of LendingClub to include the subsequent bankruptcy in is tradeline is misleading and causes damage to Gibbs's reputation for creditworthiness. Pl.'s Objs. at 11-13. Gibbs cites no case authority to support this proposition nor points to any evidence in the record of actual damage as a result of this omission. In fact, at the time of the alleged dispute, the credit report actually did report Gibbs's pending bankruptcy petition in the "Public Record Information" section, so it cannot be contended that the failure of LendingClub to

---

[1] This Court also concludes that the undisputed facts of this case fail to show, as argued by Gibbs, Pl.'s Objs. at 7-10, that LendingClub failed to conduct a reasonable investigation in violation of the principles espoused in Hinkle v. Midland Credit Mgmt., Inc., 827 F.3d 1295 (11th Cir. 2016).

11

amend its report to include the bankruptcy in its tradeline had some kind of negative implication that resulted in economic damage to Gibbs. See <u>Hicks v. Trans Union LLC</u>, No. 1:18-CV-1871-TCB-CCB, 2019 WL 4804110, at *6 (N.D. Ga. Aug. 6, 2019) ("[T]he fact that the credit report in this case also listed, in the public records section, that the bankruptcy was discharged eliminates any possibility that anyone could have been misled by the account-specific notation that the Capital One account was 'included' in the bankruptcy—which a reader would know, from another part of the report, had been discharged."), <u>R. & R. adopted</u>, No. 1:18-CV-1871-TCB, 2019 WL 4752272 (N.D. Ga. Aug. 20, 2019).

### C. The Magistrate Judge Did Not Err By Finding No Basis For Damages for Emotional Distress.

Gibbs contends that she has raised a genuine issue of material fact as to whether LendingClub's failure to make a change to her tradeline to include the bankruptcy filing that occurred subsequent to the transfer of the Loan servicing caused her emotional distress. Pl.'s Objs. at 13-15. A plaintiff seeking actual damages under the FCRA might be entitled to recover compensation for emotional distress. <u>Levine v. World Fin. Network Nat'l Bank</u>, 437 F.3d 1118, 1124 (11th Cir. 2006). However, in the context of the FCRA, a claim for emotional distress "must be supported by evidence of genuine injury . . . requir[ing] a degree of specificity which may include corroborating testimony or medical or psychological

evidence in support of the damage award." Cousins v. Trans Union Corp., 246 F.3d 359, 370 (5th Cir. 2001) (citation and internal quotation marks omitted); see also Marchisio v. Carrington Mortg. Servs, LLC, 919 F.3d 1288, 1304 (11th Cir. 2019) (internal punctuation and citation omitted) (concluding that there must be a "causal connection" between the FCRA violation and the emotional harm, and "failure to produce evidence of damage resulting from a FCRA violation mandates summary judgment.").

The evidence offered by Gibbs is limited to her own deposition testimony, in which, in response to a question whether "if, as in this case, you had as an account that wasn't showing that it was included in bankruptcy, is that something that might be frustrating to you," she responded that it is "very frustrating," and she also responded that it is "very frustrating" when asked if it frustrates her that "someone who might give you credit could look at your report and think that one of your accounts isn't going to go away." Dep. of Cortney McDaniel Gibbs (Sept. 23. 2020) [Doc. 67-9] at 142-43. This Court acknowledges that "[i]n FCRA cases, a plaintiff is not required to produce evidence of emotional distress beyond h[er] own testimony," King v. Asset Acceptance, LLC, 452 F. Supp. 2d 1272, 1281 (N.D. Ga. 2006) (citation omitted); however, in this case there has been no resultant FCRA violation that could have caused any such damages. Jordan v.

Trans Union LLC, No. 1:05 CV 305 GET, 2006 WL 1663324, at *7 (N.D. Ga. June 12, 2006) (citations omitted) ("A plaintiff must first show proof of actual injury, such as evidence of the injured party's conduct and observations of others, for damages to be awarded for mental or emotional distress under the FCRA."). Moreover, just being "frustrated" as to what someone "might" think is insufficient to support such damages even if a FCRA violation actually occurred. Cousins, 246 F.3d at 370-01 (finding evidence that plaintiff was "very upset, angry" and "real frustrated and irritated" insufficient to support damage award). Finally, as discussed above, Gibbs's credit report in fact did show in another section that she had filed a bankruptcy petition so, unlike the "hypothetical" posed to Gibbs in her deposition, there was no omission for her to be "very frustrated" about.[2]

## V. CONCLUSION

Therefore, after consideration of Gibbs's objections and a de novo review of the record, it is hereby **ORDERED** that Plaintiff's Objection to Magistrate Judge's Report and Recommendation [Doc. 91] is **OVERRULED**. The Court

---

[2] The remaining two objections, that the Magistrate Judge erred in failing to find a genuine dispute of material fact and in granting LendingClub's Motion for Summary Judgment (Pl.'s Objs. at 2) were not discussed in any greater detail than with respect to the other objections, and the Court's previous discussion applies to those generic objections as well.

14

**APPROVES AND ADOPTS** the Final Report and Recommendation [Doc. 85] as the opinion and order of this Court.  It is hereby **ORDERED** that Defendant's Motion for Summary Judgment [Doc. 66] is **GRANTED**, and that judgment be entered in favor of Defendant LendingClub Corporation.

The Clerk if **DIRECTED** to close this file.

**IT IS SO ORDERED** this 14th day of September, 2021.

_____
MARK H. COHEN
United States District Judge